IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **VERIZON DIRECTORIES CORP.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-2394-L** |
| | § | |
| **COHEN, JAYSON & FOSTER, P.A.,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), filed February 20, 2007. After consideration of the motion, response, record and applicable law, the court **denies** Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3); however, the court **transfers** this action to the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1631.

**I. BACKGROUND**

Plaintiff Verizon Directories Corp. ("Verizon")[1] filed this diversity action for breach of contract on December 27, 2006, against Defendant Cohen, Jayson & Foster, P.A. ("CJF"). Verizon is a Delaware corporation with its principal place of business at the Dallas/Fort Worth Airport. Complaint at 1. CJF is a Florida corporation with its principal place of business in Tampa, Florida. Complaint at 1; Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3)

---

[1]Plaintiff filed this action as "Verizon Directories Corp.," and used this name on all filings until March 23, 2007. In Plaintiff's March 23, 2007, Request for Extension to File Conference Status Report, Plaintiff used the name "Idearc Media Corp./ f/k/a Verizon Directories Corp." in the style of its pleading. Plaintiff has not provided this court or the clerk of court with a notice of its name change. Accordingly, Plaintiff's name in this action is still styled "Verizon Directories Corp.," and the court will use this name throughout this order.

("Def. Mot.") at 1.  Verizon contracted with CJF to provide directory advertising services, and sues for incomplete payments due under the contract.  Complaint at 2-3.  CJF contends it lacks sufficient contacts with Texas for this court to exercise personal jurisdiction over it.  Def. Mot. at 1.  The court will first set forth the legal standard before analyzing the parties' arguments.

## II.  LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant.  *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required.  *International Truck and Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003)  (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.  *Stuart*, 772 F.2d at 1192.  Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with

due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

## III.  ANALYSIS

The parties' arguments and evidence in this case are spare. CJF's four-paragraph motion states that this court lacks personal jurisdiction over it because it "does not have an office in Texas, does not regularly conduct business in Texas, and does not have sufficient connections within the State of Texas to be subject to jurisdiction in Texas." Def. Mot. at 1. CJF also contends that the contract at issue was negotiated and executed in Tampa, Florida. *Id.* In response, Verizon argues that CJF's conduct related to the contract at issue is sufficient to for this court to exercise specific jurisdiction over CJF. Plaintiff's Response to Defendant's Motion to Dismiss. ("Pl. Resp.") at 3. Specifically, Verizon argues that, under the terms of the contract, payments were to be sent to Texas, and that CJF made approximately $884,000 in payments to Verizon in Texas. *Id.* Additionally,

notices, including notices of cancellation are to be sent to Texas; notices of claims or arbitration are to mailed to Texas; and Texas law governs disputes between the parties regarding the contract. *Id.* Verizon has not addressed the issue of venue; however, Verizon supports its jurisdictional arguments with an affidavit from a custodian of records who verifies that an attached contract with the stated terms reflects the terms and conditions of Verizon's contract with CJF.[2]  Affidavit of Nancy Logue in Support of Plaintiff's Response to Defendant's Motion to Dismiss ("Logue Aff.") at 1-2.[3]  CJF did not support its motion with any verified documents or evidence.  CJF did not file a reply.

While CJF has alleged, without support, that its contacts with Texas are insufficient to support jurisdiction or venue, the burden falls on Verizon to establish a prima facie case for the court's jurisdiction. *See Ham*, 4 F.3d at 415.  In this respect, the court determines that Verizon has failed.  Verizon's evidence of CJF's contacts with Texas, consisting of payments sent to Texas and contractual provisions requiring notices to be sent to Texas, are insufficient to constitute the minimum contacts necessary to exercise jurisdiction over CJF. *See Kelso v. Lyford Cay Members Club Ltd.*, 162 Fed. Appx. 361, 364 (5th Cir. 2006) (citing *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985)).  In *Spademan*, the court concluded that a Nevada defendant was not subject to personal jurisdiction in Texas, even though he had negotiated with the Texas plaintiffs for a patent

---

[2]Although Verzion supplied this court with a copy of its contract, it failed completely to identify those portions of the contract relevant to its arguments.  The contract consists of eight pages of fine print, which the court had extreme difficulty reading.  The court could not find a provision in the contract stating that payments are to be sent to Texas.  The court is under no duty to sift through the record in search of evidence to support a party's position. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (*Adams* applies this principle in the context of a summary judgment analysis; however, this court believes the same principle is applicable to this proceeding).

[3]Logue's affidavit also states that Verizon has receive 35 payments at its offices in Texas from CJF totaling $1,230,46.04.  Logue Aff. at 2.  That statement directly contradicts Verizon's Complaint, which states that the full amount due under the contract is $1,230.46.04, of which CJF still owes $346,465.04.  Complaint at 2.  The court points out this inconsistency in the interest of thoroughness; however, the amount paid or due is not  significant to the court's jurisdictional analysis.

**Memorandum Opinion and Order – Page 5**

assignment, shipped goods to the plaintiffs in Texas, mailed payments to the plaintiffs in Texas, and signed an agreement with a choice-of-law provision that could have applied Texas law to their disputes. *Spademan*, 772 F.2d at 1188-1195.  The court evaluated the "quality of the contacts" between the parties, and stated that the "random use of interstate commerce to negotiate and close a particular contract, the isolated shipment of goods to the forum at the instigation of the resident plaintiffs, and the mailing of payments to the forum do not constitute the minium contacts necessary to constitutionally exercise jurisdiction over [the defendant]." *Id.* at 1194.  Furthermore, the court pointed out that a choice-of-law provision differs from a choice-of-forum provision and "of itself is insufficient to show that [the defendant] could anticipate being haled in to Texas courts." *Id.* at 1194-95.

In this case, CJF has had no more contacts with Texas than the defendant in *Spademan*, and perhaps even less.  CJF, a Tampa company, contracted with Verizon for advertisements in a directory, presumably to be distributed in the Tampa area or, at least, outside of Texas, since CJF contends, and Verizon does not dispute, that it has its principal place of business in Tampa and does not regularly conduct business in Texas.  CJF also contends, and Verizon does not dispute, that this contract was negotiated and executed in Tampa.  Verizon has provided this court with no evidence that extensive negotiations or communications took place in Texas, or that CJF mailed goods to Texas.  Verizon has not provided any evidence that CJF mailed notices to Texas, in accordance with their contract, or shown that the parties' contract required performance in Texas.  In short, the only conduct CJF directed toward Texas has been the mailing of payments to Verizon in Texas, the type of conduct the *Spademan* court concluded was insufficient to establish minimum contacts.

**Memorandum Opinion and Order – Page 6**

Verizon concedes that contracting with a Texas company and making payments to Texas "may not alone be sufficient to establish minium contacts." Def. Resp. at 3-4. Verizon argues, however, that "such facts, combined with the fact that defendant solicited and obtained credit from the plaintiff's Texas office [are] sufficient to show that the defendant [has] purposefully availed itself of the privilege of doing business in Texas." *Id.* at 3-4 (citing *North Coast Commercial Roofing Sys., Inc. v. RMAX*, 130 S.W.3d 491, 494-95 (Tex. App.–Dallas 2004, no pet.). Verizon alleges that CJF obtained credit from it and made 35 payments to Texas. Verizon has overstated the law, as the case it cites in support for its contention included several additional facts significant to that court's determination that jurisdiction existed. In *North Coast*, an Ohio roofing company initiated contact with a Texas company to order roof-deck material, and learned that all the material was manufactured in Texas and would be shipped from Texas. *North Coast*, 130 S.W.3d at 493. The Ohio company ordered the product and applied to open a credit account with the Texas company so that it could become a "distributor" of the Texas company's products. *Id.* at 494. The court concluded that the solicitation, the purchase of goods, combined with the credit account, payments to Texas and other terms of the contract were sufficient to establish minimum contacts. *Id.* at 495. Articulated another way, the parties appeared to contemplate a "long-term relationship with the kinds of continuing obligations and wide-reaching contacts envisioned by" the Supreme Court when it determined that minimum contacts requires a party to purposefully avail itself of the privilege of conducting activities within the forum state. *Spademan*, 772 F.2d at 1194 (citing *Burger King*, 471 U.S. at 475). In the case at hand, Verizon has provided this court with no evidence that CJF initiated contact with a Texas company in order to establish and maintain a long-term relationship with that Texas company; nor has Verizon provided this court with sufficient evidence

that CJF purposefully availed itself of the privileges of conducting activities within Texas when it contracted to advertise in a directory distributed in Tampa.  Accordingly, the court determines that Verizon has presented insufficient evidence of CJF's minium contacts with Texas to justify this court's exercise of personal jurisdiction  over CJF.

Additionally, CJF contends venue is improper under Fed. R. Civ. P. 12(b)(3).  The court agrees.  Pursuant to 28 U.S.C. § 1391, this diversity action may be brought (1) where the defendant resides; (2) where a substantial part of the events or omissions giving rise to the claim occurred; or (3) where the defendant is subject to personal jurisdiction if there is no other district where the action may be brought.  28 U.S.C. § 1391(a).  As the court has determined that CJF is not subject to personal jurisdiction in Texas, and it does not "reside" in Texas, and as Verizon has provided no evidence that a substantial part of the events giving rise to this claim occurred in Texas, venue is improper in this District.

## IV.  CONCLUSION

For the reasons stated herein, the court determines that Verizon has not presented sufficient evidence of CJF's minimum contacts with Texas; and this court's exercise of personal jurisdiction over CJF would offend traditional notions of fair play and substantial justice.  This court, therefore, lacks personal jurisdiction over Defendant CJF.  Rather than dismiss this action, however, the court believes that the better approach is to transfer it to a court in which jurisdiction and venue are proper.  As CJF is a Florida corporation with its principal place of business in Tampa, Florida, the court determines that jurisdiction and venue are proper in the Middle District of Florida, Tampa Division.  Accordingly,  the court **denies** Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), and hereby **transfers** this action to the Middle District of

Florida, Tampa Division, pursuant to 28 U.S.C. § 1631.  The clerk of the court **shall effect** the transfer of this action in accordance with the usual procedure.

      **It is so ordered** this 27th day of July, 2007.

Sam A. Lindsay
United States District Judge